UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| KIMBERLY MARKS, | ) | Case No. 08 B 06743 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

## MEMORANDUM OPINION

In this matter, a secured creditor, Marquette Consumer Finance LLC ("Marquette") objects to confirmation of the chapter 13 plan proposed by the debtor, Kimberly Marks ("Debtor"). For the reasons set forth below, the objection is sustained in part and overruled in part.

## I. JURISDICTION

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B), and (O).

## II. BACKGROUND

On May 6, 2006, the Debtor purchased a motor vehicle, a 2005 Hyundai Accent, and entered into a retail installment contract with Marquette to finance the purchase. Under the contract, the Debtor was to make sixty-six monthly payments of $257.12 beginning June 5, 2006. On January 5, 2008, the Debtor defaulted on the contract.

The Debtor subsequently sought relief under chapter 13 of the United States Bankruptcy Code when she filed her petition on March 21, 2008. Simultaneous with filing her petition, she filed a plan. Pursuant to the plan, Marquette was allowed a secured claim of $8,745.00 plus interest at 6.25% annum to be paid monthly at $125.00 per month post-confirmation. The plan also provided pre-confirmation adequate protection payments to Marquette of $100.00 per month.

## III. DISCUSSION

Marquette filed an objection to the plan on May 27, 2008 claiming that the amount of adequate protection payments it was to receive prior to confirmation of the plan was insufficient, that the plan did not provide equal monthly payments, that it was entitled to attorney's fees, and that the interest rate provided by the plan was insufficient. In response to the objection, the Debtor filed an amended plan on June 3, 2008 providing equal monthly payments of $600.00 to the trustee throughout the duration of the thirty-six month plan. The amended plan also increased the adequate protection payments to $200.00 per month. Payments to Marquette would begin April 2009 with Marquette receiving $530.00 per month and remaining constant until paid off, providing full payment of Marquette's claim. Marquette was to receive adequate protection payments until the periodic payments are due to begin in April 2009 under the plan. The plan was amended again on August 4, 2008 to provide Marquette with adequate protection payments of $225.00. The equal monthly payments remain at $600.00 per month to the trustee. The Debtor argues that this plan adequately protects Marquette both pre-confirmation and post-confirmation, that the equal monthly payments under the plan comply with 11 U.S.C. § 1325(a)(5)(B)(iii), that Marquette is not entitled to reimbursement of its attorney's fees and the interest rate is adequate under *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

Also during this time, the insurance on the collateral lapsed prompting Marquette to seek relief from the automatic stay on June 2, 2008. Relief was entered for Marquette effective June 4, 2008. However, the Debtor reinstated the insurance on June 3 and the stay was reinstated. Marquette points to this as an additional basis for its position that the collateral is not adequately protected.

2

*A. Adequate Protection Payments*

Marquette's first objection to the Debtor's plan is that its interest in its collateral is not adequately protected under the plan. Under the Debtor's original plan, the Debtor proposed to make monthly adequate protection payments pre-confirmation of $100.00, which is greater than 1% of the value of the collateral at the time of filing. The Debtor relies upon several bankruptcy court decisions from other jurisdictions setting a fixed rate for adequate protection payment at 1% of the value of the collateral. *See, e.g., In re Hill*, 2007 WL 499622, at *4 (Bankr. M.D.N.C. 2007). In contrast, Marquette urges that the proper method of determining monthly adequate protection payments is different regarding motor vehicles. According to Marquette, the payments are calculated by determining the monthly rate of depreciation by examining the value of the collateral during the month the petition is filed and the month immediately after filing using the N.A.D.A. Guide.[1] According to this method, the monthly adequate protection payments to Marquette should be $225.00. The Debtor has since amended her plan to provide Marquette with adequate protection payments of $225.00 monthly in what she deems as an effort to avoid further litigation of this issue.

Section 1326 of the Bankruptcy Code was amended in 2005 to provide adequate protection payments pre-confirmation to prevent potential abuse in bankruptcy cases. *In re Robson*, 369 B.R. 377, 379 (Bankr. N.D. Ill. 2007); *see also In re DeSardi*, 340 B.R. 790, 809 (Bankr. S.D. Tex. 2006) (analyzing statutory construction of §§ 1325 and 1326). A common example of abuse occurred where a chapter 13 debtor would file a plan that provided little or no payment to a motor vehicle

---

[1] The N.A.D.A. Guide is a guide distributed annually by the National Automobile Dealers Association commonly used by the automotive industry and bankruptcy courts to determine the proper value of a motor vehicle. *See, e.g., In re Robson*, 369 B.R. 377, 382 (Bankr. N.D. Ill. 2007); *In re Thompson*, 2008 WL 2157163, at *2 (Bankr. N.D. Ill. 2008).

lender at the beginning of the plan but provided a graduated payment increase or balloon payment toward the end of the plan. *Robson*, 369 B.R. at 379. The lender would wait months without receiving any payment while the debtor continued using the collateral for free while the collateral depreciated. *Id.* at 379-80. In the most extreme cases, the debtor would continue to use the collateral then convert the case to a chapter 7 case and surrender the vehicle, leaving the lender without compensation for the collateral's depreciation while the debtor was using it without payment to the lender for extended periods of time. *Id.* at 380.

Adequate protection required under § 1326, amended under the Bankruptcy Abuse and Consumer Protection Act (BAPCPA), now combats this type of abuse. Section 361 provides different means of adequate protection. *Id.* at 380; *In re Thompson*, 2008 WL 2157163, at *2 (Bankr. N.D. Ill. 2008). One method is to provide "a cash payment or periodic cash payments" to the lender. *Thompson*, 2008 WL 2157163, at *2 (quoting 11 U.S.C. § 361(1)). There is a difference in opinion regarding how to calculate adequate protection payments. Some districts require that it be a nominal percentage amount around 1-2% of the collateral's worth at the time of filing. *See, e.g., Hill*, 2007 WL 499622, at *4 (using a 1% of the collateral's value as a fixed rate that may be rebutted by an objecting creditor); *In re Beaver*, 337 B.R. 281, 285 (Bankr. E.D.N.C. 2006) (recognizing 1% of value of collateral as agreed by parties sufficient for adequate protection); *DeSardi*, 340 B.R. at 797 (employing 1.5% of value of collateral as provided by the district's local rule). Other districts, as well as this one, recognize adequate protection payments as equaling the amount by which the collateral is depreciating. *Thompson*, 2008 WL 2157163, at *2 (citing *First Fed. Bank of Calif. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998)); *see also Robson*, 369 B.R. 377, 380 (holding that motor vehicle lender must be compensated for depreciation of collateral in

4

order to be adequately protected.).

There are many different methods to calculate adequate protection payments. In this district, the calculation may be computed by looking at the N.A.D.A. Guide to compare the value of the collateral at the time of filing the petition with the value of the collateral in the month immediately after filing. *Robson*, 369 B.R. at 382; *see also Thompson*, 2008 WL 2157163, at *3 (applying calculation used in *Robson* to determine amount of monthly adequate protection payment). Therefore, the method urged by Marquette is the correct method of calculating the amount of adequate protection payments.

In this case, the N.A.D.A. Guide states the value of a 2005 Hyundai Accent is $7,825.00 for March 2008, the month when the Debtor filed her petition, and $7,600.00 for April 2008, the month immediately thereafter. The difference, representing the depreciation of the collateral, is $225.00. This amount represents the correct monthly adequate protection payment to Marquette. Therefore, Marquette's objection regarding the amount of adequate protection payments is sustained; the Court notes that the Debtor increased the plan's adequate protection payment to $225.00 after the objection was raised.

## B. Equal Periodic Payments

Marquette next objects to payment of its claim under the Debtor's plan. The plan provides that Marquette will continue to receive monthly adequate protection payments of $225.00 until April 2009 when payments to Marquette will increase to $530.00 per month. Marquette argues that under the Bankruptcy Code, a confirmed plan must provide equal monthly payments beginning with the first payment under the plan. The Debtor disagrees, arguing that the plan complies with the Code because the Code does not specify when payments based on claim value under the plan must actually

begin and that payments under the plan to a creditor can begin at any point so long as the creditor is receiving adequate protection payments until those payments on the claim begin.

The epicenter of this dispute is interpretation of 11 U.S.C. § 1325(a)(5)(B)(iii), which provides that the court shall confirm a plan if:

> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan[.]

11 U.S.C. § 1325(a)(5)(B)(iii).

There is a split in authority relating to this issue. *See generally In re Sanchez*, 384 B.R. 574 (Bankr. D. Or. 2008) (discussing split). The line of cases supporting Marquette's interpretation is exemplified in *In re Denton*, 370 B.R. 441 (Bankr. S.D.G.A. 2007). *Denton* concluded that monthly payments on secured claims must be equal; beginning with the first payment made under a confirmed plan until the claim is paid in full.[2] *Denton*, 370 B.R. at 446; *see also In re Williams*, 385 B.R. 468, 474-75 (Bankr. S.D. Ga. 2008) (adopting *Denton* analysis as its holding); *Sanchez*, 384 B.R. at 577 (holding same). However, a slight majority recognizes that payments on secured claims may be deferred until later in the plan so long as the secured creditor is provided adequate protection payments in the interim. *See, e.g., DeSardi*, 340 B.R. at 806; *In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007); *Hill* 2007 WL 499622, at *7 (Bankr. M.D.N.C. 2007); *In re Blevins* 2006 WL

---

[2]This issue was not explicitly before the *Denton* Court. *Denton* involved a motion for contempt against a chapter 13 trustee for disbursement errors. *Denton*, 370 B.R. at 443. Although not technically before it, *Denton* explored the issue of periodic payments on secured claims under 11 U.S.C. § 1325(a)(5)(B)(iii). *See id.* (stating "I dismiss the Motion because the Trustee is shielded from suit by derived judicial immunity. I thus consider issues the Motion raises.").

2724153, at *2 (Bankr. E.D. Cal. 2006); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][A], p. 1325-36 (15th ed. rev'd 2008) (stating "[a] debtor may, for example provide for equal monthly amounts to be distributed to a particular secured creditor for the first 24 months of a 36-month plan or, if the requirement of providing adequate protection is met, the last 24 months of a 36-month plan.").

*Denton* and its progeny begin with interpretation of § 1325(a)(5)(B)(iii). *Denton* states that "periodic payments" as used in the statute is not a defined term but simply requires payments that occur at regular intervals post-confirmation. *Denton*, 370 B.R. at 445. Adequate protection payments and equal periodic payments are distinguishable under this view. Equal periodic payments are meant to encompass all payments made post-confirmation to reflect the collateral's value that is recoverable under the plan, including the first payment of the plan. *Id.* at 445-46. Second, *Denton* believes deferring equal payments to a later time under a plan invites increased litigation by objecting creditors, possibly contravening the purpose for which Congress made the most recent changes to the Code under BAPCPA. *Id.* at 446.[3] Finally, *Denton* concluded that a deferred start date for equal payments under a plan imposes an undue burden on judicial economy by requiring a case-by-case analysis by the chapter 13 trustee and the court. *Id.*

Conversely, *DeSardi* and its progeny note that nothing in the language of § 1325(a)(5)(B)(iii) requires that equal periodic payments must begin immediately upon the effective date of the plan.

---

[3]This argument is strengthened in districts that utilize a fixed rate for determining the amount of adequate protection payments, such as the 1% of the value of the collateral as used in *Denton*. *Denton*, 370 B.R. at 446. However, as discussed *supra*, this Court notes that adequate protection payments are valued using the method discussed earlier by calculating the difference in the value of a motor vehicle between the month the petition is filed and the immediate month thereafter. This may bear on the volume of potential objections by secured motor vehicle lenders.

7

*DeSardi*, 340 B.R. at 805. Implicit in this view is that § 1325 did not intend payments to be made until termination of the plan even if the claim is satisfied in full earlier in the plan. *Id.* Under a reading of § 1325 requiring equal periodic payments to begin immediately upon confirmation, with those payments continuing throughout the duration of the plan, plans that pay secured creditors in a shorter duration would be unconfirmable because some creditors may receive a windfall at the expense of other creditors. *Id.* The logic follows that if Congress wanted to stretch out payment of claims to creditors to the end of the plan, it would have drafted § 1325 in that way. *Id.*

Additionally, *Hill* notes the *Denton* view conflicts with other sections of the Code. *Hill*, 2007 WL 499622, at *7 *Hill* recognizes that the *Denton* view may violate § 1326(b), which states "[b]efore or at the time of each payment to creditors under the plan, there shall be paid... any unpaid claim of the kind specified in section 507(a)(2)[.]" *Id.* (quoting 11 U.S.C. § 1326(b)(1)). Since § 1326 requires payment of § 507(a)(2) administrative claims (which includes debtors' attorneys' fees) before or concurrently with other claims (including secured claims), a plan would be unconfirmable where the debtor could not make payments covering both attorney's fees and the equal monthly payment in the first month of the plan. *Id.*; *see also DeSardi*, 340 B.R. at 807-08 (stating that § 1326 requires all § 507(a)(2) claims are to be paid before or at the same time as payment of other claims).

Looking at both lines of cases, the Court agrees with the majority view first recognized in *DeSardi*. The plan meets the requirements of §§ 1325 and 1326. The Debtor is making equal monthly payments of $600.00 to the trustee under the plan beginning with the first payment. Requiring Marquette to receive its claim value payment beginning with the first payment and throughout the duration of the plan conflicts with the provision of the Code requiring priority

8

treatment of administrative expenses. Further, the dangers of abuse that precipitated the amendments to § 1325 are not inherent under this interpretation of the statute. Since Marquette is receiving adequate protection payments in the amount of depreciation while the administrative claims are covered, it will not be left holding the bag for any loss in value of the collateral if the plan should later fail or become converted to a chapter 7 case. Marquette is not injured by the plan so long as it is receiving these monthly payments equal to the collateral's depreciation. Note that the Debtor is required to make equal monthly payments to the plan by § 1325(a)(5)(B)(iii), not to a particular creditor. Moreover, the trustee is not obligated to disburse equal monthly payments to the creditor because of the trustee's duty to pay priority claims. *See Erwin*, 376 B.R. at 902 (noting that accelerated payment of attorney's fees is expressly authorized by the Code, stating that a chapter 13 trustee has independent authority to administer a plan in holding that the trustee is not bound by the equal payment provision of § 1325 and finding that accelerated payment of debtors' attorney's fees was not intended to be precluded by the equal monthly payment provision). Therefore, Marquette's objection relating to it receiving equal periodic payments under the Debtor's plan is overruled. There is no requirement in § 1326 that the plan payments to the creditor start in month one. Such cannot be contemplated since payment of priority payments under §§ 1326(b), 507(a)(2), and 503(b) of attorney's fees and trustee's fees will necessarily reduce the creditors' take in the initial stage of the plan as they have to be paid "before or at the time of each payment to creditors." 11 U.S.C. § 1326(b).

Section 1325(a)(5)(B)(iii) at (I) provides that periodic payments be made to the plan in equal monthly amounts; at (II) that provision requires conversely that adequate protection payments be made "during the period of the plan." The equal periodic payment provision does not include such

9

language.

C. *Attorney's Fees*

Marquette next objects to confirmation of the Debtor's plan because it does not provide for payment of attorney's fees it incurred in this case. Specifically, Marquette seeks reimbursement for objecting to the Debtor's plan.

"Under the American Rule, the prevailing litigant is ordinarily not entitled to collect reasonable attorneys' fees from the loser." *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, __ U.S. __, 127 S.Ct. 1199, 1203 (2007) (internal quotation and citations omitted). This general principle may be overcome by a valid and enforceable contract. *Id.* Under the Bankruptcy Code, such a provision under a valid contract allocating attorney's fees remains enforceable save a contrary provision under the Code. *Id.* at 1203-04 (citing 4 COLLIER ON BANKRUPTCY ¶ 506.04[3][a], p. 506-118 (rev. 15th ed. 2006)). Absent a provision in the Bankruptcy Code, substantive state law supplies creditors' entitlements in bankruptcy. *Id.* at 1205. The Bankruptcy Code does not disallow contracts-based claims for legal fees incurred solely on litigating issues of bankruptcy law. *Id.* at 1204.

In this case, the retail installment contract executed between the parties provides "Buyer agrees to pay reasonable attorneys' fees; [sic] costs and expenses incurred in the collection or enforcement of the debt or in realizing on the collateral." (Claim of Marquette Consumer Finance LLC, Ex. 3). The parties agree that this provision is valid pursuant to the Illinois Motor Vehicle Retail Installment Sales Act. *See* 815 ILL. COMP. STAT. § 375/11.

The Debtor argues that attorney's fees cannot be awarded because it is not oversecured. To support her assertion, the Debtor relies on *Thompson*. It is true that *Thompson* mentions that an

oversecured creditor may receive fees and charges under § 506(b) of the Code. Section 506(b) allows reimbursement of expenses incurred in recovering the value of the property only up to the amount that the collateral is oversecured. *See Thompson*, 2008 WL 2157163, at *3. However, *Thompson* involved a motor vehicle purchased outside of 910 days prior to the filing of the underlying bankruptcy. *Id.* at *1. In this case, the motor vehicle in dispute is undersecured distinguishing it from the motor vehicle in *Thompson*. In addition, it was purchased within 910 days prior to the Debtor filing for bankruptcy. Therefore, subject to the infamous hanging paragraph of § 1325, section 506 is inapplicable in this case. *See* § 1325(a).[4] Without § 506, the parties are left to what their contract provides. *In re Wright*, 492 F.3d 829, 832 (7th Cir. 2007). Since the contract provides Marquette with attorney's fees associated with costs of collection and Marquette's objection to the amount of adequate protection payments caused the Debtor to amend her plan to provide the correct amount, Marquette's objection to the Debtor's plan as it relates to Marquette's attorney's fees is sustained. The Court rejects the Debtor's attempt to distinguish collection efforts from contract enforcement efforts.

D. *Interest Rate Determination*

Marquette next objects to the interest rate provided under the plan. Under the Debtor's

---

[4] The hanging paragraph of § 1325(a) provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if the collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a).

11

proposed plan, Marquette is to receive 6.25% interest per annum. Marquette believes it is entitled to a higher rate of interest and is seeking a rate of 8% per annum, 3% over the prime rate of 5%. To support its objection, Marquette argues it is entitled to the higher rate because of the higher risk involved in this case. Specifically, Marquette notes that the Debtor allowed the insurance on the collateral to lapse. Additionally, Marquette states that the Debtor must provide it with proof of insurance for six months of coverage. In response, the Debtor argues that her proposed rate of interest is sufficient and that the insurance lapsed through mere inadvertence and was quickly reinstated once the lapse in coverage was discovered. Further, the Debtor argues that the risk of default is reduced because she is on payroll control since her payments to the trustee are deducted from her paycheck.

The proper method for determining the interest rate for a motor vehicle loan under a chapter 13 plan is the formula approach. *Till v. SCS Credit Corp.*, 541 U.S. 465, 479-80 (2004). This method begins with the prime rate; additional interest is added to account for the increased risk of lending to a bankrupt debtor, but not too high to doom the plan. *Id.* at 479. The bankruptcy court looks to different circumstances when adjusting the prime rate including "the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." *Id.* Creditors carry the onus of showing that they are entitled to a higher interest rate. *Id.*

Looking to the circumstances of this case, Marquette urges it is entitled to an 8% interest rate because the Debtor proposed a plan that was not feasible since it initially did not provide adequate protection payments, thereby increasing litigation resulting from Marquette's objection. Marquette alleges, by proposing a plan that does not provide correct adequate protection payments, the Debtor "has purposely invited litigation and sought to increase the litigation expenses to [Marquette]."

(Marquette Mem. of Law, pg. 14). Further, Marquette contends that the Debtor's lack of proof of insurance prepaid for six months warrants a higher rate. Marquette fails to prove bad faith on the part of the Debtor in filing her plan. The Debtor is maintaining proper insurance on the vehicle and is on payroll control, significantly decreasing the possibility of default as long as she is employed. *See e.g., In re Bivens*, 317 B.R. 755, 765 (Bankr. N.D. Ill. 2005). The contract does not require that insurance coverage be prepaid for six months. *See* Claim of Marquette Consumer Finance LLC, Ex. 3 (imposing no such requirement in retail installment contract of parties). Marquette does not assert authority for its position that the debtor is required to provide insurance beyond what is required under the contract. The Court finds that Marquette has not met its burden of showing that it is entitled to an interest rate higher than that proposed by the Debtor's plan or insurance in a prepaid six-month amount. Marquette's objection to the interest rate proposed in the plan is overruled.

## IV. CONCLUSION

For the foregoing reasons, the Court sustains Marquette's objections regarding whether it is entitled to adequate protection payments of $225.00. The Court also finds that Marquette is entitled to attorney's fees. Marquette's objections regarding the start of the Debtor's equal monthly payments to it under the plan, the interest rate it will receive, and the provision of insurance, are all overruled. The confirmation hearing is reset to 10:30 a.m. on October 6, 2008.

**DATED: September 25, 2008**                    **ENTER:**

*Jacqueline P. Cox*
_____
**Jacqueline P. Cox**
**United States Bankruptcy Judge**